```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                        08-CV-5309(JMR/RLE)
```

Richard Krawiecki            )
                             )
    v.                       )      ORDER
                             )
William Hawley; Brent Lindgren;  )
and the County of Mille Lacs     )

Plaintiff claims his rights were violated by Deputy William Hawley; Sheriff Brent Lindgren; and Mille Lacs County during his arrest. He sues under 42 U.S.C. § 1983 and Minnesota state law. Defendants move for summary judgment; plaintiff opposes the motion. Defendants' motion is granted in part, and denied in part.

I. Background[1]

   A. The Arrest

At approximately 1:00 a.m. on November 29, 2003, plaintiff was driving home to Foreston, Minnesota. He denies consuming any alcohol the evening before. (Krawiecki Dep. 29:6.) Plaintiff claims the car's gas pedal felt sticky as he pulled into town, which may have made it appear the vehicle was "kind of accelerating kind of slowing down." (Krawiecki Dep. 33:10-12.) Plaintiff recalls driving by Deputy Hawley's parked squad car a quarter block from his home. (Krawiecki Dep. 36:5-7.)

---

[1]The facts are considered in the light most favorable to plaintiff, the non-moving party, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). The facts in this Opinion are drawn from the pleadings, and are not determinations on the merits.

Plaintiff did not see Deputy Hawley again until he arrived at home, and was standing at his door, when Hawley came up behind him, grabbed him, "swung [him] down and jumped on [him]." (Krawiecki Dep. 29:15-16.) When plaintiff asked what was going on, he claims Hawley punched him and dug his knees into his back. He then heard Deputy Hawley tell his dog, Taz, to "sic[] him." (Krawiecki Dep. 29:15-20.) He states he did not hear a warning about the dog, and begged Hawley to call off the dog. At some point, plaintiff claims the "dog gave up" and other officers arrived. Plaintiff was then handcuffed and taken to the hospital.

While, for purposes of this motion, the Court credits Krawiecki's version of the facts, the Court notes Deputy Hawley tells a dramatically different story. He claims that, early in the morning of November 29, 2003, he observed plaintiff speed into town, run a stop sign, and hit a snowbank. (Hawley Dep. 153:15-19.) He began to follow plaintiff with his squad lights on, but plaintiff did not pull over. When Hawley saw plaintiff park and leave his vehicle, he thought plaintiff was preparing to run. (Hawley Dep. 162:21-23.) He told plaintiff to stop, or he would release his dog. Despite the warning, plaintiff ran toward the back door of his home, at which point Hawley released his dog, Taz. (Hawley Dep. 163:3-14.) Hawley approached plaintiff and was punched in the chest several times. (Hawley Dep. 163:12-14.) He remembers ordering plaintiff to get on ground, and striking

plaintiff in the stomach with his knee. Hawley radioed for back up, and Deputy Holanda responded. When Holanda arrived, Hawley was finally able to handcuff plaintiff and take him to the hospital.

   B. Post-Arrest

At the hospital, plaintiff was examined and bandaged. He refused to take a blood alcohol test because he was "so shook up and everything, [he] didn't want to cooperate with [the officers] at all." (Krawiecki Dep. 49:21-24.) Krawiecki was booked into the Mille Lacs County Jail, where he pleaded guilty to driving while impaired after refusal to submit to a test, a gross misdemeanor. As a result of the plea, plaintiff recalls he stayed in jail "a while." (Krawiecki Dep. 51:13-25; 52:10.)

Plaintiff claims Taz "chewed [him] up pretty good," biting both of his arms and one of his legs. (Krawiecki Dep. 45:1-2.) He states he "couldn't even move [his] arm for the first month in the jail." Plaintiff reports his neck and back still trouble him, and his elbow makes a clicking noise. Plaintiff received follow-up care at the Milaca Clinic, and sees a chiropractor for back pain.

Plaintiff offers testimony from two expert witnesses. Dr. Richard Polsky, a certified applied animal behaviorist, states that, "Given the limited degree of risk that Mr. Krawiecki presented to the police and to the public, that the release of a dog to attack or subdue him was inappropriate." Dennis Waller, a former police officer and law enforcement training expert, states

Hawley's repeated use of excessive and unnecessary force demonstrates failure by the Sheriff's Department to supervise, investigate potential misconduct, and discipline when warranted. Accordingly, Waller concludes the Sheriff's Department created a practice "whereby the use of excessive and unnecessary force is ignored and condoned." (Pl.'s Mem. Opp. Summ. J. 7.)

C. <u>Mille Lacs County Policies and Procedures</u>

Mille Lacs County authorizes and defines the use of police dogs at Section 424.2 of its Policy and Procedure Manual. The policy states, "The use of sheriff dogs is a legitimate tool in law enforcement," and is justified when force is necessary "to make or maintain an arrest." The Manual emphasizes a deputy may only use the amount of force necessary for an arrest, and must issue a warning before releasing a canine unit.

Sheriff Lindgren cannot recall any investigations into his deputies' use of force. More specifically, he "knows of no investigation" into Deputy Hawley's use of excessive force. The Sheriff denies ever receiving a complaint concerning Hawley's use of force, and has never investigated a deputy's actions without a specific complaint. (Pl.'s Mem. Opp. Summ. J. 9.) At the time of this incident, Hawley reported to three supervisors: Richard Dukowitz, Alan Marxhaussen, and Greg Weller. Both Dukowitz and Weller reviewed "use of force" reports generated by Hawley. Hawley's supervisors cannot recall any criticisms of Hawley during

4

his evaluations.

   D. The Lawsuit

   This case initially included plaintiffs Lonnie Strandlund, Christopher Holscher, and Jeremiah Brendsel. Each plaintiff claimed they were injured in separate instances when Deputy Hawley subjected them to excessive force. After granting partial summary judgment to defendants as to Lonnie Strandlund's claims, this Court dismissed the remaining plaintiffs' claims as unrelated. Richard Krawiecki appealed, and the Eighth Circuit Court of Appeals remanded with instructions to sever his claims. Strandlund v. Hawley, 532 F.3d 741 (8th Cir. 2008).

   Plaintiff now sues Deputy William Hawley, Mille Lacs County Sheriff Brent Lindgren, and Mille Lacs County claiming a violation of his constitutional rights under 42 U.S.C. § 1983, and violations of state law.

   On July 7, 2009, defendants moved for summary judgment on all counts. Plaintiff opposed the motion. On August 21, 2009, the Court heard oral argument and took the matter under advisement. Four months later, the Court stayed this matter pursuant to the Service Members Civil Relief Act, 50 U.S.C. app. §§ 501-96, when Hawley left for active duty. Hawley returned on June 15, 2010, and the Court's stay was lifted on August 14, 2010.

II. Discussion

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49.

A. Excessive Force

Plaintiff claims Hawley violated his Fourth Amendment right to be free from excessive force.[2] Defendants respond, claiming Hawley is entitled to qualified immunity because plaintiff cannot demonstrate a violation of a clearly established constitutional right. Defendants are incorrect.

As a general rule, qualified immunity shields government officials from liability whose conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

---

[2] The complaint alleges violations of the First, Fourth, Fifth, and Fourteenth Amendments. Plaintiff's reply to defendants' summary judgment motion, however, abandons all but his Fourth Amendment excessive force claim. This claim is analyzed under the Fourth Amendment's reasonableness standard. See Graham v. Connor, 490 U.S. 386, 395 (1989).

6

U.S. 800, 818 (1982). In examining claimed violations, courts apply a two-part test, inquiring whether the plaintiff can demonstrate a constitutional violation, and whether that constitutional right was clearly established at the time of the violation. See Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009). A court may use its sound discretion in deciding which of the two questions to address first. Id. at 818.

    1. Constitutional Right

The Court finds plaintiff has alleged facts which, if believed by a jury, support his claim that Hawley used excessive force. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009)(citations omitted). Here, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).

Plaintiff contends he was merely standing at his back door when Hawley swung him down, punched him, and sicced Taz on him without warning. Plaintiff denies resisting Hawley's commands. Both parties contend the dog was not called off until backup arrived. If plaintiff's facts are assumed to be true, Hawley was

without justification in throwing plaintiff to the ground, punching him, digging his knees into plaintiff's back, and using his dog in an extended, unwarranted, attack.

Unwilling to credit plaintiff's allegations, defendants argue Hawley's use of force cannot have been unreasonable, because plaintiff did not sustain permanent injury. The Eighth Circuit considers the extent of a plaintiff's injuries as a part of its analysis when determining whether an officer's use of force was reasonable. See, e.g., Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990)(extent of injury relevant to reasonableness of officer's use of force); Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir. 1985)(considering "the extent of injury inflicted," in determining whether an officer reasonably used force).

On this record, the Court cannot hold plaintiff's injuries so minimal as to preclude recovery as a matter of law. See, e.g., Foster, 914 F.2d at 1082 (denying recovery where plaintiff suffered no "long-term injury as a result of" handcuffs being applied too tightly). Plaintiff claims permanent injuries as a result of Hawley's use of force. His elbow "clicks," and he experiences soreness and stiffness in his neck and back. Plaintiff claims he sought further treatment at a clinic and with a chiropractor. A claim of excessive force may be sustained on these facts.

## 2. Clearly Established Violation

Assuming plaintiff's version of the facts, the Court has no difficulty finding his rights were well established. A reasonable peace officer knows he or she cannot use excessive force against an unresisting citizen.

"A right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Brown, 574 F.3d at 499 (quotations omitted). As such, the "relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. The right to be free from excessive force is clearly established. Graham, 490 U.S. at 395. Specifically, "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest or pose little or no threat to the security of the officers or the public." Brown, 574 F.3d at 499. On November 29, 2003, a reasonable officer would have known it was unlawful to unleash a dog upon a nonviolent and stationary suspected misdemeanant. Assuming the facts in the light most favorable to plaintiff, the Court cannot summarily find Deputy Hawley entitled to qualified immunity.

B. Monnell Claim

Beyond his claims against Deputy Hawley, plaintiff accuses the County of violating his constitutional rights under § 1983.

Plaintiff would similarly hold Sheriff Lindgren and Mille Lacs County liable for supervisory liability.

   1. Municipality Liability

A municipality may be held liable under § 1983 if "a municipal custom or policy caused the deprivation of the right protected by the constitution or federal law." Angarita v. St. Louis County, 981 F.2d 1537, 1547 (8th Cir. 1992). Plaintiff has failed to identify any unconstitutional municipal policy. Accordingly, the Court considers whether any municipal custom deprived plaintiff of his constitutional right to be free from excessive force. A plaintiff can demonstrate an unconstitutional municipal custom by showing: a continuing, widespread persistent pattern of unconstitutional misconduct by the governmental entity's employees; deliberate indifference to, or tacit authorization of such conduct; and that the custom caused plaintiff's injury. Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). But again, plaintiff makes no such showing.

While plaintiff notes the requirements needed to establish municipal liability in passing, he utterly fails to demonstrate any facts from which a jury could conclude such an practice exists. To the contrary, he points to the fact that neither Sheriff Lindgren nor Deputy Hawley's direct supervisors knew of any complaints concerning Hawley's use of force. Absent an allegation and some evidence of notice, plaintiff cannot make out a case of deliberate

indifference.

### 2. Supervisory Liability

Supervisors can be liable for a subordinate's acts if the supervisor "personally participated in or had direct responsibility for the alleged violations," or "actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." McDowell v. Jones, 990 F.2d 433, 435 (8th Cir. 1993). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what" he might see. Ottman v. City of Independence, 341 F.3d 751, 761 (8th Cir. 2003).

Plaintiff's complaint fails to make a claim for supervisory liability. He offers no evidence showing Sheriff Lindgren knew of, or avoided confronting, any unconstitutional conduct. Here again, plaintiff emphasizes "[n]one of Defendant Hawley's supervisors ever brought anything" to Sheriff Lindgren's attention. (Pls.' Mem. Opp. Summ. J. 9.) Absent any evidence that Sheriff Lindgren turned a blind eye to constitutional abuses, plaintiff has failed to make out a claim for supervisory liability.

### C. State Law Claims

Defendants argue Krawiecki fails to establish a prima facie case of assault, battery, or intentional infliction of emotional distress. At this stage in the litigation, the Court disagrees.

Under Minnesota law, an officer's use of force may amount to

11

an assault and battery if the force is excessive. Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1985). Here, plaintiff has alleged facts from which a reasonable jury could conclude Hawley used excessive force. Accordingly, for the same reasons the Court denied defendants' qualified immunity claim, it denies summary judgment on the assault and battery claims.

To establish plaintiff's claim of intentional infliction of emotional distress, he must demonstrate Hawley intentionally or recklessly engaged in extreme and outrageous conduct causing severe emotional distress. Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999). The parties dispute both the outrageousness of Hawley's conduct and the extent of plaintiff's emotional injuries. A jury crediting plaintiff's story could conclude Hawley behaved outrageously, and plaintiff experienced "severe mental and emotional distress." (Compl. ¶ 20.) It does appear this claim is more problematic than plaintiff's claim of excessive force, but the Court cannot discern any difference in trial evidence which might be admitted were it to dismiss this claim. As a result, the Court finds these disputed factual questions cannot be resolved on summary judgment, and the Court leaves them for the jury.

1. Official and Vicarious Immunity

Hawley maintains he is entitled to official immunity from plaintiff's state law tort claims. "Official immunity prevents a public official charged by law with duties which call for the

12

exercise of his judgment or discretion from being held personally liable for damages, unless the official has committed a willful or malicious act." Mumm v. Mornson, 708 N.W.2d 475, 490 (Minn. 2006)(quotations omitted). Mille Lacs County, in turn, claims vicarious official immunity protects it against plaintiff's respondeat superior claims. Vicarious official immunity protects a governmental entity from suit based on the acts of an employee entitled to official immunity. Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 315 (Minn. 1998).

Plaintiff concedes Hawley's actions were "discretionary in the course of his official duties;" therefore, the Court addresses whether plaintiff accuses Hawley of willful or malicious behavior. "Malice means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991). Krawiecki accuses Hawley of throwing him to the ground, punching him in the eye, and directing his dog to bite him repeatedly. (Compl. ¶ 8.) In addition, Krawiecki maintains he did nothing to provoke the attack. (Compl. ¶ 14.) Accepting plaintiff's allegations, a jury could well find Hawley acted willfully and maliciously, which is sufficient to deny summary judgment at this time on the assault, battery, and intentional infliction of emotional distress claims.

Where Hawley is not entitled to official immunity, Mille Lacs

County is not entitled to vicarious official immunity for plaintiff's related claims of respondeat superior. See Wiederholt, 581 N.W.2d at 316.

Deputy Hawley is, however, entitled to immunity on plaintiff's negligence claim. The claim of negligence is not based on malicious conduct, but requires proof that defendant did not act in a reasonably prudent manner. See Sang v. City of St. Paul, No. 09-455, 2010 U.S. Dist. LEXIS 55997, at *25 (D. Minn. June 8, 2010). Accordingly, even if plaintiff demonstrated Hawley's negligence, official immunity would protect his acts. The Court dismisses this claim and the respondeat superior negligence claim against the County and Sheriff under the doctrine of vicarious official immunity.

### D. Negligent Selection, Training, Retention, Supervision, Investigation, and Discipline

The Court finds Mille Lacs County and its Sheriff are immune from plaintiff's allegations of negligent selection, training, retention, supervision, investigation, and discipline.[3] Under Minnesota law, municipalities are immune from "any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is

---

[3] The Court notes that "current Minnesota law does not recognize a claim for negligent training." Mann v. Shevich, No. 08-5202, 2010 U.S. Dist. LEXIS 16109, at *28 (D. Minn. 2010). Accordingly, the Court addresses statutory immunity only as to the remaining claims of negligence.

14

abused." Minn. Stat. § 466.03. In analyzing the statute's application, a court first considers whether the challenged conduct is protected by statutory immunity. Statutory immunity is available only for discretionary acts by government agents. Steinke v. City of Andover, 525 N.W.2d 173, 175 (Minn. 1994).

Minnesota courts have clarified that decisions regarding hiring, supervision, and retention of employees are discretionary and entitled to statutory immunity. Hassan v. City of Minneapolis, No. 04-3974, 2006 U.S. Dist. LEXIS 64213, at *28 (D. Minn. Sept. 1, 2006). Accordingly, the Court finds Mille Lacs County is immune from plaintiff's claims.

The parties, however, dispute whether statutory immunity bars claims against Sheriff Lindgren. The law is clear - Minnesota does not limit the doctrine to counties.[4] See, e.g., Mann v. Shevich, No. 08-5202, 2010 U.S. Dist. LEXIS 16109, at *28 (D. Minn. 2010)(finding sheriff and county immune); Hawkinson v. Anoka County, No. A05-2251, 2006 Minn. App. Unpub. LEXIS 996, at *14-15 (Minn. Ct. App. Aug. 29, 2006)(finding district court erred in not finding statutory immunity for a county and its sheriff). Both the

---

[4] The Court acknowledges its previous statement that Sheriff Lindgren does not enjoy statutory immunity because "statutory immunity applies only to municipalities." Strandlund v. Hawley, No. 05-CV-468, 2007 U.S. Dist. LEXIS 27600, at *23 (D. Minn. Mar. 30, 2007). More recent case law suggests the statute protects both sheriff and county. See, e.g., Mann v. Shevich, No. 08-5202, 2010 U.S. Dist. LEXIS 16109, at *28 (D. Minn. 2010)(finding sheriff and county immune).

County and the Sheriff are entitled to statutory immunity.

Even if statutory immunity did not shield Sheriff Lindgren, he remains officially immune from plaintiff's negligence claims. "[O]fficial immunity protects a public official charged by law with duties that call for the exercise of judgment to discretion unless the official is guilty of a wilful or malicious wrong." Gleason v. Metro. Council Transit Operations, 582 N.W.2d at 216, 220 (Minn. 1998). As before, these acts involved discretionary conduct. The pleadings disclose no evidence from which a jury could conclude Sheriff Lindgren acted willfully or maliciously. As such, he is entitled to official immunity from Krawiecki's negligent selection, retention, supervision, investigation, and discipline claims.

III. Conclusion

For the foregoing reasons, IT IS ORDERED that:

1. Defendant's motion for summary judgment [Docket No. 17] is granted in part, and denied in part, as follows:

    a. As to plaintiff's Monell claim (Count 2), defendants' motion is granted.

    b. As to plaintiff's tort claims for negligence (Count 6), and negligent selection, training, retention, supervision, investigation, and discipline (Count 7), defendants' motion is granted.

    c. As to all other claims (Counts 1, 3-5, & 10), defendants' motion is denied.

Dated: August 17, 2010


                              s/ James M. Rosenbaum
                              JAMES M. ROSENBAUM
                              United States District Judge